In the Matter of DANIEL SNEE, Respondent, v. COUNTY COURT OF THE COUNTY OF CAYUGA et al., Appellants.

Fourth Department, February 20, 1969.

304

*Raymond S. Sant* for County Court of Cayuga County, appellant.

*P. Alex Lipski* as District Attorney for Cayuga County, appellant in person.

*Charles W. Avery* for respondent.

WITMER, J. The County Court of Cayuga County and the District Attorney of said county appeal from an order of Special Term, Supreme Court prohibiting them from prosecuting petitioner-respondent, Daniel Snee, further with respect to Cayuga County Indictment No. 2096 and the charges contained therein, and discharging him from restraint or custody under the indictment and exonerating his bail.

By said indictment petitioner was charged on October 2, 1967 with the crime of rape, first degree, committed September 8, 1967, and he went to trial thereunder on November 13, 1967 when the jury was selected. On the morning of the 14th the first witness was sworn; testimony continued for two days, and on the morning of the 16th the Judge presiding declared a mistrial over the objection of defendant's counsel and without giving him an opportunity to be heard or to make a record. The District Attorney had not moved for a mistrial, but he made no objection thereto of record.

The grounds for the court's action were stated by him to be two, first, that in his opening remarks to the jury defendant's counsel stated that the possible punishment which could be imposed on defendant if convicted was 25 years' imprisonment, and second, that in cross-examining police officer Bertonica who had arrested defendant, defendant's attorney asked the question, " Now you knew he [one Benjy Smith McIntosh, the eye-witness who, the District Attorney said in his opening to the jury, would supply positive proof to convict defendant] was a convicted rapist once before, did ". At this point the court sustained the objection to the question, reprimanded defendant's counsel, and adjourned until the next morning when he granted the mistrial.

Defendant then instituted this article 78 CPLR proceeding in Special Term, Supreme Court for the order from which this appeal is taken.

Of course, the punishment which is to be meted out to a defendant after he is found guilty of a crime other than murder is always for the court to determine, not the jury; and it was improper for the defendant's attorney to discuss the matter before the jury. Had the District Attorney deemed such remarks prejudicial he should have made objection thereto at the time, but he did not. Had he done so, the court could have admonished the jury to disregard the remarks, or, if the District Attorney believed that the remarks were beyond correction and moved for a mistrial, the court could have granted a mistrial then without endangering the People's right to renew the prosecution, no witness having yet been sworn (*Matter of Bland* v. *Supreme Ct., County of N. Y.*, 20 N Y 2d 552, 555; *People ex rel. Meyer* v. *Warden*, 269 N. Y. 426, 428). By the failure of the District Attorney to object to the remarks at the time of or immediately following the opening, and the failure to move for mistrial by reason thereof, he waived it, and it was improper for the court on its own motion, after two full days of testimony, to seize upon the incident as a ground for mistrial.

The other ground for the mistrial was the question as to the police officer's knowledge that the prosecution's eyewitness was a convicted rapist. Of course, had said eyewitness been on the witness stand and testified against the defendant, as the District Attorney promised he would do, it would have been proper for defendant's counsel to cross-examine him on his record of conviction for rape. Petitioner's attorney states to this court that he was a member of the Cayuga County District Attorney's staff when said eyewitness McIntosh was convicted of rape, and officer Bertonica was on the Auburn police force at the time and knew about it; that such was the foundation for his question, and he would have so explained to the Trial Judge had he been given the opportunity. Nevertheless, it was premature and improper for defendant's counsel to attack directly said eyewitness in the course of cross-examining the officer. The defendant's attorney urges, however, that his question was proper by way of cross-examination of officer Bertonica as to his credibility, motives and reliability. This argument depends upon evidence which had been adduced at the trial prior to the question which prompted the mistrial.

The defendant (petitioner herein) was 18 years of age and the girl was 17 years of age. It was defendant's contention

that she was his girl friend whom he intended to marry, and that her father disliked him. On the early evening of September 8, 1967 he invited her and some other boys and girls to his home for a social party while his parents were away. They had acquired some whiskey, and they drank that and some beer and smoked cigarettes, and they talked and listened to the radio until defendant's parents returned at 9:00 P.M. By 9:30 P.M. his father invited the guests to leave. The girl became ill, and defendant's mother wanted to apply an icepack, but defendant thought it best to take her for a walk, and he did. He gave a statement to the police early the next morning describing his version of what then happened, as follows:

He walked his girl around the block and across a vacant lot not far from his home, where he assisted her while she vomited; and he says that while so doing he was struck over the head and fell to his knees. On getting up he was struck down again and rendered unconscious. On coming to he saw someone on or near his girl who had then passed out, and defendant tried unsuccessfully to reach that person who then ran away. Defendant then carried his girl to his home where he collapsed. Both were taken to a hospital where several stitches were taken in defendant's head. (Officer Bertonica later that evening observed these stitches.) The girl remained unconscious for many hours. The basis of the charge of rape is that the girl was too much intoxicated to know what she was doing or to consent; her age was not made a factor; and a physical examination of her showed the presence of male sperm in and around her vagina.

Shortly after defendant and the girl were taken to the hospital officer Bertonica received a telephone call. He then went to the hospital and saw the girl there and he talked with her parents there. He promptly put out an '' alert '' for defendant or at least notified various persons that he wanted to talk with defendant, and he went looking for defendant and found him with some other boys.

In the meantime, on leaving the hospital defendant and another went looking for the stick with which he had been struck. He found it and gave it to officer Bertonica when the officer found him. Defendant then told the officer that he was looking for the fellow who had struck him on the head. Officer Bertonica nevertheless took him into the police car, read the *Miranda* warnings to him and took him to headquarters where he, the defendant, made the statement above described.

In the course of his testimony officer Bertonica stated that he had gone to the vacant lot and found a spot where defendant and the girl had been (an empty cigarette package and a ring

were found there), and he took pictures of the area. On cross-examination he stated that Benjy Smith McIntosh, the People's eyewitness, lives next to said spot; in fact the spot was at the rear of McIntosh's home or apartment. Defendant's attorney interrogated the officer about his failure to investigate Benjy Smith McIntosh whom defendant had charged as his assailant and the one, if anyone, who had raped the girl; and about the fact that instead of investigating McIntosh he insisted on charging the defendant with the offense.

It was in the light of the above evidence and defendant's counsel's effort to attack the officer's veracity and conduct that the question was asked whether the officer did not know that Benjy Smith McIntosh was a convicted rapist.

In this state of the record it may well be doubted that it was error for defendant's counsel to ask officer Bertonica the question as to his knowledge of McIntosh's criminal record, in connection with the officer's investigation of McIntosh's knowledge of the events of that evening. As for it constituting ground for mistrial, the court should have been mindful of the fact that the District Attorney had promised to call the eyewitness to testify and that at such time the fact of his prior conviction would most probably have come out (see *People* v. *Sorge,* 301 N. Y. 198, 201–202). But even if we assume that the question was improper, it must be held that the court exceeded its discretion in declaring the mistrial.

" From all the decisions it appears that a reason justifying the ordering of a mistrial in a criminal cause must be a necessitous one, actual and substantial." (*Matter of Nolan* v. *Court of General Sessions,* 11 N Y 2d 114, 118.) In the cited case, at page 119, Chief Judge DESMOND went on to quote from *People* v. *Goldfarb* (152 App. Div. 870, 874) that " ' unless the trial is terminated by the disagreement of the jury, or their discharge pursuant to law, or by the consent of the accused, or through extreme or absolute necessity, as by illness or death, he has been put in jeopardy and cannot be prosecuted again in the same or another court on the same charge; and the discontinuance of the prosecution is equivalent to a discharge, for the constitutional protection grants the defendant immunity against a second trial ' ". Chief Judge DESMOND added, p. 119: " The policy reason for the double jeopardy prohibition (N. Y. Const., art. I, § 6) is that a defendant should not be harassed by a succession of trials."

Clearly there was no " extreme or absolute necessity " for a mistrial in this case. If it was error to ask the question, it was one

which the court could have corrected by immediate and forceful charge to the jury with respect thereto.

Special Term, therefore, properly made the order of prohibition against the appellant District Attorney; and that part of the order appealed from should be affirmed.

Another problem is presented, however, with respect to the proceeding as against the County Court. CPLR 506 (subd. [b]) provides in part as follows: "A proceeding against a body or officer shall be commenced in any county within the judicial district where * * * the proceedings were brought or taken in the course of which the matter sought to be restrained originated * * * except that 1. a proceeding against a justice of the supreme court or a judge of a county court * * * shall be commenced in the appellate division in the judicial department".

It is clear from the statute that Special Term had no jurisdiction over the County Court; and the order is a nullity with respect to that court. Concerning further prosecution of the defendant under the indictment, as a practical matter it is of little moment that the order is not effective to prohibit County Court, because the prohibition against the District Attorney effectively stops further proceedings. The order, however, does more: it discharges petitioner from restraint or custody under the indictment and exonerates his bail. These are directives addressed to the County Court.

Thus, in order for the order to be made completely effective, the original jurisdiction of this court under CPLR 506 (subd. [b], par. 1) must be invoked. The appeal amounts to a submission to this court of the original application against the County Court, and we may entertain and determine it (*Matter of Nolan* v. *Court of General Sessions*, 15 A D 2d 78, 79–80, affd. 11 N Y 2d 114). For the reasons stated above, we hold that petitioner has been placed in jeopardy and that by reason of the mistrial he is entitled to an order prohibiting the County Court of Cayuga County from prosecuting him further under said Indictment No. 2096, discharging him from any restraint or custody resulting from said indictment and exonerating his bail.

The order should, therefore, be modified in accordance with the foregoing.

Bastow, P. J., Goldman, Del Vecchio and Henry, JJ. concur.

Order and judgment entered thereon, unanimously modified in accordance with the opinion by Witmer, J., and as so modified affirmed without costs.