**Margaret MacPHERSON, Petitioner,**

**v.**

**STATE of Alaska, Respondent.**

**No. 2266.**

Supreme Court of Alaska.

March 27, 1975.

Lawrence J. Kulik, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for petitioner.

Louis E. Agi, Stephen G. Dunning, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for respondent.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

RABINOWITZ, Chief Justice.

This case presents difficult questions as to the circumstances under which a mistrial may be said to have been declared sua sponte by the trial judge and as to the impact of a court's sua sponte declaration of mistrial on the ability of the state to retry the defendant. Following two and one-half days of jury selection, MacPherson's trial for the sale of amphetamines commenced on August 14, 1973. During the abbreviated course of the trial, defense counsel twice moved for a mistrial. While we are not in agreement as to how the record should be interpreted, it does disclose that subsequent to the second motion based on the alleged prejudice of the court toward the defense and the jury's awareness of the bias, the court recessed. Upon reconvening out of the presence of the jury, Judge Occhipinti declared a mistrial, at least initially in response to defense counsel's motion. Prior to recalling the jury, an exchange took place between Judge Occhipinti and defense counsel during the course of which defense counsel seemingly attempted to withdraw his request for a mistrial although the withdrawal was more in the form of a denial that the request had ever been made. Among other things, defense counsel indicated that he was well pleased with the jury presently impanelled and felt that a better one could not be found. The trial judge acknowledged the fact that defense counsel had changed his mind concerning the desirability of a mistrial but

decided that a mistrial was necessary in the best interest of the defendant and therefore declared the mistrial, referring to it as sua sponte.[1] The jury was then called back and dismissed.

The case was subsequently scheduled for retrial. Defendant moved for dismissal of the charges, asserting that the state was barred from reprosecution by virtue of the constitutional prohibition against double jeopardy.[2] The motion was denied, and defendant now petitions this court seeking a reversal of the order denying dismissal of charges against her. We have previously held that our extraordinary review jurisdiction is properly exercised in cases presenting an issue identical to that posed here and, adhering to these past decisions, we grant review in this case.[3]

On the merits, MacPherson urges that, there being no manifest necessity for the declaration of a mistrial, the federal and state constitutional guarantees[4] against being placed twice in jeopardy for the same offense bar reprosecution. It is not disputed that jeopardy had attached since the declaration of mistrial took place on the third day of trial.[5] Nor is there any question as to the basic rule of law to be applied. Following the United States Supreme Court decision in United States v. Perez,[6] this court has adopted the rule that the premature termination of a trial will bar retrial under the double jeopardy prohibition unless the termination was justified by manifest necessity.[7] Thus the question presented for review is whether manifest necessity existed for the declaration of a mistrial.

It is a well settled rule, which the state contends may appropriately be applied to this case, that the requisite manifest necessity which prevents a declaration of mistrial from barring reprosecution will generally be found where the mistrial is declared at the request of the defendant.[8] There can be no doubt but that Judge Occhipinti was initially respond-

---

1. THE COURT:
   Well, you can cover it anyway you wish, Mr. Kulik, and the record speaks for itself. Your innuendos and your assertions made when I excused the jurors is a basis for my mistrial. You've implied certain things here that may have been prejudicial —unduly prejudicial for your client and my opinion is that the prejudice that's derived for your client is probably your own doing and that's why I'm going to declare a mistrial right now, and I'm doing so. And if you want to make sua sponte, it'll be sua sponte because I think the defendant's entitled to a better defense than she's been getting, and by better I mean not necessarily factually, but attitude-wise. I think the attitude you've displayed toward this court is reprehensible and I resent it and I'm trying to keep control of myself and I would probable do a better job now that I've reflected, but I think it has necessitated a mistrial and I am so declaring it. . . .
   THE COURT:
   Well, before we leave that, then your sudden change of mind before is a matter of record now.
   MR. KULIK:
   Pardon me?
   THE COURT:
   Your sudden change of mind as far as your motion was concerned is a matter of record now. You have changed your mind concerning the mistrial that you requested?

2. Alaska Const. art. I, § 9 provides:
   No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness against himself.
   United States Const. amend. V provides in part:
   [N]or shall any person be subject for the the same offense to be twice put in jeopardy of life or limb.

3. Koehler v. State, 519 P.2d 442, 445 n. 3 (Alaska 1974); citing Muller v. State, 478 P.2d 822 (Alaska 1971), as dispositive of the question whether a petition for review of an order denying a double jeopardy claim should be granted.

4. See note 2, supra.

5. Koehler v. State, 519 P.2d 442, 448 (Alaska 1974); Selman v. State, 406 P.2d 181, 186 (Alaska 1965).

6. 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

7. Lewis v. State, 452 P.2d 892, 895 (Alaska 1969).

8. Muller v. State, 478 P.2d 822, 826 (Alaska 1971); Selman v. State, 406 P.2d 181, 186 (Alaska 1965); United States v. Tateo, 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed. 2d 448, 452 (1964).

ing to the requests of defense counsel when the judge called a recess and subsequently informed counsel for both sides out of the presence of the jury of his intent to declare a mistrial. However, on the crucial question of whether defense council then attempted to withdraw his request for a mistrial prior to binding judicial action thereon, this court is divided. The majority is of the opinion that defense counsel did not effectively attempt to withdraw his request for a mistrial; that the trial court judge, in declaring a mistrial, was responding to defense counsel's request and that, since the mistrial was thus declared at the request of the defendant, reprosecution of the defendant is not barred by the constitutional prohibitions against being placed twice in jeopardy.[9] In reaching this conclusion, we focus on the exchange which took place between defense counsel and the trial judge immediately prior to the declaration of mistrial. Mr. Kulik, defense counsel, stated:

> Well, I think that this court's feelings for defense counsel in this case are not only obvious, you know, in this last few minutes as the court has stated them explicitly, but I think in more subtle ways they've been made obvious to the jury and if you want my honest opinion I do think that the jury has picked up on the court's bias toward the defense in this case. Whether it's toward me personally I don't know, but I think the jury has picked up on it and I would ask for a mistrial.

To this the court replied:

> Mr. Kulik, you've been aiming for a mistrial. You've been baiting this court and this record will so show. Let's recess for a few minutes.

Upon reconvening out of the presence of the jury, the judge stated:

> I have recessed and cooled off a little, but I find I must declare a mistrial at this time. The defense has asked for a mistrial.

The court then requested defense counsel to locate the defendant and bring her into the courtroom with which request counsel complied. At this point, the record shows that defense counsel then made the following disingenuous statement:

> May the record also reflect that at the time the defense asked for a mistrial the mistrial was based on the fact that the defendant thought that evidence was being brought in on redirect examination which was prejudicial and inadmissible for the reasons stated at the time and that was the only reason that the defense asked for a mistrial and that the court is granting a mistrial for separate reasons which are the court's.[10]

In response to defense counsel's inaccurate statement, the court said in part:

> Your innuendos and your assertions made when I excused the jurors is a basis for my mistrial. You've implied certain things here that may have been prejudicial—unduly prejudicial for your client and my opinion is that the prejudice that's derived for your client is probably your own doing and that's why I'm going to declare a mistrial right now, and I'm doing so. And if you want to make [it] sua sponte, it'll be sua sponte because I think the defendant's entitled to a better defense than she's been getting, and by better I mean not necessarily factually but attitude-wise. . . .
>
> . . . . . . .
>
> So you can say whatever you wish for the record. Go ahead.

Defense counsel's reply was again disingenuous. His response was:

> . . . Your Honor, I think we had an excellent jury panel. Mr. Bittner and I spent 2 and a half days selecting a jury and I don't think we could get a better

---

9. *See* note 8, *supra*.

10. Prior to the request for mistrial by defense counsel which is the subject of this opinion, defense counsel requested a mistrial on the ground that the prosecution had elicited irrelevant and prejudicial testimony regarding uncharged misconduct on petitioner's part.

jury than this and I like the jury and I was satisfied with the trial other than the one narrow point that I made earlier. We've already gone over that. There's no sense in—of belaboring the point.

Also, the trial judge's final comments before recalling the jury are of considerable significance. The record shows that the court stated:

> Well, as I said the implications made by counsel—and it's a matter of record, the implications about the attitude of the court toward him is very firm in the record and for that reason I'm declaring a mistrial. . . .

These final comments of the trial judge disclose that he was grounding his declaration of mistrial on the very basis urged by defense counsel in support of his second motion for mistrial.

Defense counsel, despite his denials, moved for a mistrial which the trial court granted on the grounds urged. At no point did defense counsel unequivocally move to withdraw his motion, object to the trial court's stated intention to declare a mistrial or object to the actual grant of a mistrial. Once defense counsel invited the court to grant the relief of a mistrial, he was under a duty not only not to mislead the trial court, but also to clearly reveal that he desired to withdraw his motion and would object to the discharge of the jury. Thus, the mistrial must be characterized as being at the request of defense counsel, and therefore reprosecution is not prohibited.[11]

Affirmed. [12]

BOOCHEVER, J., with whom CONNOR, J., joins, dissenting.

11. *See* note 8, *supra.*

12. While we cannot agree with the dissent's characterization of the declaration of mistrial as being on the judge's own motion, we concur in the legal analysis set forth in the dissenting opinion which follows from that initial characterization.

13. Cardenas v. Superior Court, 56 Cal.2d 273, 14 Cal.Rptr. 657, 363 P.2d 889, 891 (1961); Maes v. District Court, 503 P.2d 621, 625

BOOCHEVER, Justice, with whom CONNOR, Justice, joins (dissenting).

I read the record as dictating a different conclusion. Counsel for the defendant made it clear that he had changed his mind and no longer desired a mistrial when he stated that he was both generally satisfied with the course of the trial and particularly pleased with the present jury, being of the opinion that a better one could not be selected. The latter statement is of considerable significance since defense counsel's motion for a mistrial under scrutiny here was based on possible jury prejudice towards his client. Furthermore, Judge Occhipinti expressly acknowledged defense counsel's change of heart, noting that defense counsel's change of mind concerning his request for a mistrial "is a matter of record now". The judge went on to say that he would declare the mistrial on his own motion, and he then proceeded to recall and dismiss the jury. From a conclusion that defense counsel did attempt to withdraw his second motion for a mistrial, it follows that a more prolonged analysis of the law concerning the relationship of the prohibition against double jeopardy and the relief of a mistrial is necessary.

I

## WITHDRAWAL OF THE MOTION FOR MISTRIAL

The precise question to be dealt with initially is whether the defense may withdraw a motion for a mistrial after the motion has been granted but before the jury has been so notified and dismissed.

The ability of the defendant to withdraw a motion for a mistrial has been expressly recognized by other jurisdictions.[13] The

(Colo.1972); *see also* Muller v. State, 478 P.2d 822, 828 (Alaska 1971), where this court implicitly recognized the right of the defendant to withdraw a motion for mistrial by stating:

> Manifest necessity was conclusively established when appellants' insistence upon a mistrial was accepted by the court. *At no time did the appellants evidence a desire to retract their motion.* [emphasis added]

courts which have dealt with the question point to the dismissal of the jury as that court action after which the motion may not be withdrawn. In allowing a defendant to withdraw his motion for a mistrial before the court had acted on the motion, the California Supreme Court reasoned:

> While we have found no direct authority upon the precise question in this state, we can see no good reason why a party making a motion during the course of a trial may not, upon reflection, withdraw it at any time before the court has made an order responsive to the motion. Such authority as we have found in other jurisdictions fully accords with this view. If something had occurred to prejudice the opposing party by the motion's withdrawal, a different question would be presented; for example, it has been held that on a noticed motion, where the opposing party has incurred costs in preparing to oppose it, the motion may not be withdrawn without the payment of such costs. *But the people can show no prejudice here, since the withdrawal of the motion would have allowed the trial to proceed* and would have amounted to a waiver of any claim of prejudice from the incident by petitioner thereafter, either on appeal or on motion for a new trial or otherwise.[14]

Even more explicit in defining the nature of court action which will preclude withdrawal of a defense motion for mistrial is the statement by the Colorado Supreme Court in Maes v. District Court:[15]

> True, initially, defense counsel did not object to the court granting the mistrial. However, the record is clear that petitioner changed his mind, and counsel restated his position to the contrary, objecting to the premature termination of the trial, *before the jury had been dis-*

*charged.* We do not read into these circumstances an irretrievable binding consent to a mistrial and a waiver of the constitutional protection against double jeopardy. *Had the court acted upon the initial position taken by defense counsel and discharged the jury, a different result would have obtained.*

While defense counsel in this case did not exactly ask to withdraw his motion for a mistrial, he nonetheless clearly conveyed to the trial judge the fact that he no longer desired a mistrial. The judge recognized this and decided to declare the mistrial sua sponte. These actions effectively served to withdraw defense counsel's motion for a mistrial. All this occurred before the jury was recalled and dismissed. Contrary to the opinion of the majority, I believe that under these facts, the mistrial was not at the request of the defendant. If there was manifest necessity justifying the declaration of mistrial, it must thus be sought in other circumstances of the case.

It is generally agreed that a trial court judge may, in the exercise of his discretion, declare a mistrial without the consent of the defendant and even over his objection.[16] When such a mistrial is declared under proper circumstances, retrial will not be precluded by a plea of double jeopardy. Three aspects of the instant case are said to provide justification for a judge's sua sponte declaration of mistrial, and each is now considered.

## II

## MOTIVATION OF THE JUDGE

The state argues that one factor to be weighed in determining the propriety of a judge's sua sponte declaration of a mistrial is the motivation of the judge in so ruling.

---

14. Cardenas v. Superior Court, 56 Cal.2d 273, 14 Cal.Rptr. 657, 659, 363 P.2d 889, 891 (1961) [emphasis added, citations omitted].

15. 503 P.2d 621, 625 (Colo.1972) [emphasis added].

16. Lewis v. State, 452 P.2d 892, 894 (Alaska 1969); Downum v. United States, 372 U.S.

734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102 (1963). *But cf.* Curry v. Superior Court, 2 Cal.3d 707, 87 Cal.Rptr. 361, 470 P.2d 345 (1970) (there is no duty on the part of the defendant to object to such motions. Mere silence will not constitute a waiver of his constitutional right. His express consent to the motion is required).

Relying on Gori v. United States,[17] respondent contends that, when the trial judge acts in the sole interest of the defendant in declaring a mistrial, which is apparently the situation in the present case, this fact should weigh in favor of allowing retrial. In *Gori,* the trial judge declared a mistrial with neither approval nor objection on the part of the defendant. The precise reason for the mistrial was unclear. However, on review the United States Supreme Court assumed the judge had so acted in order to protect the defendant from prosecutorial misconduct. The court noted that a trial court judge may, for reasons he deems compelling, declare a mistrial without the defendant's consent and even over his objection where substantial justice cannot be obtained without discontinuing the trial. It further observed that the trial judge is best situated to intelligently make such a decision. The court, with four justices dissenting, then found retrial not precluded by the double jeopardy prohibitions, declaring:

> . . . [W]e are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that it's necessary consequence is to bar all retrial.[18]

The authoritativeness of this decision and the theory that judicial motivation should be a significant factor in determining the propriety of a judge's sua sponte declaration of mistrial was at least erroded, if not eliminated, by the plurality decision in United States v. Jorn.[19] Therein Justice Harlan, with Chief Justice Burger, Justice Douglas and Justice Marshall joining in the opinion and Justice Black and Justice Brennan joining in the judgment, concluded that appellate courts should not be limited in their review of a judge's sua sponte declaration of mistrial to a determination of which side benefited by the mistrial.

Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action. The Government contends, however, that the policies evinced by the double jeopardy provision do not reach this sort of injury; rather the unnecessarily inflicted second trial must, in the Government's view, appear to be the result of a mistrial declaration which "unfairly aids the prosecution or harasses the defense".[20]

A number of federal courts have considered the problem created by the contradictory statements in *Jorn* and *Gori.* In large part, these courts have concluded that judicial motivation in declaring a mistrial sua sponte should be given little, if any, weight in assessing the propriety of the mistrial.[21] I agree with the interpretation of these federal courts and therefore would find the fact that the trial judge was acting in what he felt to be the best interests of the defendant when he declared a mistrial is not determinative of the propriety of the judge's sua sponte declaration of mistrial.

### III

### JUDICIAL PREJUDICE

The state also asserts that the actions of the defense counsel prejudiced the judge

---

17. 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

18. 367 U.S. at 369, 81 S.Ct. at 1527, 6 L.Ed. 2d at 905.

19. 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

20. 400 U.S. at 483, 91 S.Ct. at 556, 27 L.Ed. 2d at 555–56.

21. United States v. Walden, 448 F.2d 925, 928 (4th Cir. 1971) (*Jorn* all but eliminated trial judge's motivation as an element) ; Whitfield v. Warden, 355 F.Supp. 972 n. 7 (D.Md. 1973) (all federal courts which have considered the impact of *Jorn* have held in accordance with the plurality therein), reversed on other grounds, 486 F.2d 1118, 1125 (4th Cir. 1973) (trial judge's beneficent motive now to be accorded little or no weight).

against the defense, and this judicial prejudice supplies the manifest necessity for the mistrial. No authority is cited supporting this contention, but rather the state seeks to rely on two cases holding the bias of a juror to be sufficient justification for a declaration of a mistrial.[22] It is not at all clear that the judge disqualified himself for this reason. In fact, it appears that his concern was with the jury receiving possible inferences adverse to the defendant and not an inability on his part to proceed impartially.

One of the prime qualifications of a judge is the ability to preside impartially at a trial. If the judge knows of reasons which would prevent such impartiality, he must disqualify himself in advance of trial, and we have a statute permitting peremptory challenge of a judge if a party believes he cannot obtain a fair and impartial trial under him.[23] Once a criminal trial has been commenced, the defendant is entitled to the services of such an impartial arbiter, and the judge cannot allow himself to lose that impartiality because of action of counsel. If, however, a judge should find himself in a position where he believes he can no longer function with the requisite degree of fairness, a defendant should not be prejudiced by a resultant declaration of mistrial. He should not be subjected to a second trial because of such a failure on the part of the judiciary.[24]

Using a different rationale, the California Court of Appeals in Scott v. Municipal Court[25] prohibited a retrial where the trial judge, sitting without a jury, declared a mistrial because he felt the actions of defense counsel had so prejudiced him as to render an impartial verdict impossible. In granting defendant's writ of prohibition to prevent retrial, the court quoted from the California Supreme Court opinion in Curry v. Superior Court[26] as follows:

> Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety mentioned above. These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare.

## IV

## COUNSEL-PROVOKED JURY PREJUDICE

Of considerably greater significance in deciding whether there existed justification for a judge's sua sponte declaration of a mistrial is the possibility of counsel-provoked jury prejudice. While it is not entirely clear from the record whether this was a factor in Judge Occhipinti's dismissal of the jury,[27] Judge Kalamarides relied on it in denying defendant's motion to dismiss,[28] and thus it will be considered as

---

22. Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891).

23. AS 22.20.022.

24. If facts should be revealed at the trial indicating to the judge that he has a conflict of interests, a difficult situation could be presented. Such a question is not presented here.

25. 17 Cal.App.3d 885, 95 Cal.Rptr. 460, 462 (1971).

26. 2 Cal.3d 707, 87 Cal.Rptr. 361, 367, 470 P.2d 345, 351 (1970).

27. In dismissing the jury, Judge Occhipinti stated:
    Well, as I said the implications made by counsel—and it's a matter of record, the implications about the attitude of the court towards him is very firm in the record and for that reason I'm declaring a mistrial, and you'll be advised as soon as I talk to the calendar clerk about when this matter will be resumed.

28. At page 5 of his opinion denying MacPherson's motion to dismiss the charges against her, Judge Kalamarides wrote:
    It was decided here that the jury should be discharged, as cautionary instructions or sanctions or advice to counsel would not

a possible circumstance providing the manifest necessity to justify a declaration of mistrial.[29]

United States v. Dinitz [30] dealt with the propriety of a lower court declaration of mistrial because of counsel-provoked jury prejudice. In his opening statement, after specifically being told that such is not the place for personal opinions, defense counsel referred to the case as the case of the incredible witness. This caused the judge to have the jury removed and to severely reprimand defense counsel, threatening to prohibit counsel from practicing before the court should he attempt to bait the court again. In the same opening statement, defense counsel began to assert that defendant had received phone calls shortly after his indictment offering a dismissal of charges for a certain price. The government objected and again the jury was removed from the courtroom. The court then asked defense counsel for evidence that the government's informer was involved in the extortion attempt. When no proof was forthcoming, the court ordered defense counsel out of court. Shortly thereafter, a mistrial was declared. In re-

viewing the propriety of that order, the Fifth Circuit Court of Appeals observed that "the ultimate cause of the mistrial remains the counsel-provoked jury prejudice." [31] The court initiated its inquiry into the propriety of the mistrial by examining the actions of defense counsel and their effect on the jury and it concluded:

> If the court below considered that the jury . . . had been prejudiced by Wagner's conduct . . . such prejudice could have been cured by a cautionary instruction. This being so, the existence of such curable prejudice would not support a mistrial.[32]

The mistrial was found not to be justified by manifest necessity. In so holding, the court stated:

> . . . Wagner's actions did not rise to the malevolent level of creating incurable jury prejudice or requiring the banishment of counsel from the courtroom to preserve the orderly processes of justice. Adequate alternatives were available to deal with the errors which did not require sacrificing of the defendant's ability to continue his defense.[33]

---

correct an inadvertent accumulated matrix of jury prejudice against the defendant. Super.Ct. Opinion No. 73–619Cr. (3rd Dist., June 28, 1974).

29. This is not to imply that there was counsel-provoked jury prejudice in this case. The "cold" record fails to indicate any disrespect or disruptive conduct on the part of counsel. While not in a position to judge demeanor evidence or inflections that may have been given otherwise innocuous remarks, in the context of the written record, I find no justification for the sua sponte declaration of mistrial.

30. 492 F.2d 53 (5th Cir. 1974). But note that the court of appeals has agreed to reconsider its decision in this case. 15 Crim.L. Rptr. 2399.

31. Id. at 59. Judge Kalamarides, in his opinion denying petitioner's motion for dismissal of charges against her, attempts to distinguish Dinitz from the instant case. The distinction he makes is based on the fact that in Dinitz representative counsel had been barred from the case, and defendant no longer had control of his defense. Because of this, defendant's

request for a mistrial did not waive his claim to double jeopardy. The question of whether defendant did or did not request the mistrial in this case has already been resolved. The central issue at this point is whether the counsel-created jury prejudice justified a declaration of mistrial. The question which faced the court in Dinitz was identical.

32. 492 F.2d at 60.

33. Id. at 61. See also United States v. Whitlow, 110 F.Supp. 871, 876 (D.D.C.1953) wherein the court stated:
Research does not disclose any case in which the granting of a mistrial for misconduct of defense counsel has been upheld, although conceivably such action would be proper in case of misconduct going to the very vitals of the trial itself, for example, if the defendant or his counsel attempted to tamper with the jury. Minor misconduct of defense counsel, such as overstepping of the limit set by the court for the examination of a witness, does not under the authorities warrant a mistrial thereby depriving the defendant of his right to secure a verdict from the jury that had been sworn to try him.

Furthermore, both the United States Supreme Court [34] and this court [35] have stated that the trial judge, prior to the declaration of a mistrial, should consider alternative means less drastic than the abrupt termination of the trial. Whenever such alternative remedies capable of adequately curing any jury prejudice that may have arisen from the errors or misconduct of counsel exist, they should be utilized. Only in their absence will the draconian measure of ordering a mistrial over the defendant's objection be appropriate, and the retrial of that defendant be constitutionally permissible.

## V

## PROHIBITION AGAINST DOUBLE JEOPARDY

While fully cognizant of the interests of the public in seeing that a criminal prosecution is allowed to proceed to a verdict, either of acquittal or conviction,[36] and of the significant public interest in preserving the processes of our criminal justice system from undue and premature interference, we must at the same time be mindful of our supervening duty under both the federal and state constitutions to insure that the important rights and liberties guaranteed criminal defendants by those documents are given effect. In general, the underlying concern reflected in the constitutional prohibition against being placed twice in jeopardy is to prevent the state from repeatedly and unnecessarily bringing the full panoply of its prosecutorial powers and the awesome, sometimes overbearing, weight of its authority to bear against an individual defendant in order to gain a conviction for a single offense. It is this historically justifiable concern which the Supreme Court has voiced in its discussions of double jeopardy.

. . . [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.[37]

In Illinois v. Somerville,[38] the Supreme Court set forth the following guidelines for measuring the propriety of a judge's sua sponte declaration of a mistrial:

A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court.[39]

The court made it clear, however, that in exercising this judicial discretion, considerable restraint is in order.

The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken, since the interest of the defendant in having his fate determined by the jury first impaneled is itself a weighty one.[40]

This emphasis on restraint is in keeping with the court's previous determination that, in deciding whether it is proper to discharge one jury and impanel a second to try a criminal defendant, doubt must be resolved in favor of the liberty of the citizen

34. United States v. Jorn, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 558 (1971).

35. See Lewis v. State, 452 P.2d 892, 896–97 (Alaska 1969). See also Carsey v. United States, 129 U.S.App.D.C. 205, 392 F.2d 810, 812 (1967); Snee v. County Court, 31 A.D.2d 303, 297 N.Y.S.2d 414, 417 (1969).

36. Illinois v. Somerville, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425, 430 (1972).

37. Green v. United States, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

38. 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973).

39. Id. at 464, 93 S.Ct. at 1071, 35 L.Ed.2d at 431.

40. Id. at 471, 93 S.Ct. at 1073, 35 L.Ed.2d at 435.

rather than allowing the exercise of what could be an " . . . unlimited, uncertain, and arbitrary judicial discretion."[41]

Applying these standards to the instant case, I find no facts to indicate such error was committed prior to the declaration of mistrial as would make reversal on appeal a certainty. As to whether an impartial verdict had become impossible at the time of the mistrial, I am of the opinion that such a situation was not shown to exist.

Prior to the dismissal of the jury, defense counsel informed the judge that not only was he generally satisfied with the course of the trial, but he was also particularly well pleased with the present jury. Having been thus informed, the judge proceeded to declare a mistrial with no indication that any alternative, less drastic remedy was given consideration. Under these circumstances, I would find that the defendant was improperly deprived of her weighty right to have her fate determined by the jury first impanelled, and would conclude that, there being no manifest necessity to declare the mistrial, the superior court order denying MacPherson's motion to dismiss the charges against her should be reversed.

41. Downum v. United States, 372 U.S. 734, 738, 83 S.Ct. 1033, 1035, 10 L.Ed.2d 100, 104 (1963).