The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge (dissenting).

The district court found that mere physical presence in the Virgin Islands was sufficient to satisfy the residency requirements of 16 V.I.Code § 291(a): "Proceedings under this chapter may be instituted by any female resident of the Virgin Islands. . . ." The court declared:

> It is true that a matter of domicile, apart from Mrs. Bodin, is not really a permanent resident of the Virgin Islands. She does happen to be here within the jurisdiction physically. So for the time being, she is residing here and has been so residing for the past few months.

The majority approve this finding, but add the gloss that the district court also found an "intent to remain there for a measurable period of time." The district court found, and it is not controverted, that at the time of trial, Mrs. Bodin had been "so residing for the past few months." I find no reference by the district court to the critical issue of intent. Although I agree there are no chronological limitations in order to qualify as a resident, either temporary or permanent, that which distinguishes mere physical presence in a community from residence therein, is intention. An airline stewardess who intends to remain overnight in St. Thomas is not a female resident of the Virgin Islands. If she intends to stay two weeks or one month for a vacation, she still has not transferred her visitor status to that of resident.

Mrs. Bodin came to the Virgin Islands from Sweden, filed this paternity suit, and then departed. Later she returned to await trial. Thereafter, she departed again.

The Virgin Islands statute requires that the proceedings "be *instituted* by any female resident." Thus, the critical issue was the status of Mrs. Bodin at the time she instituted the proceedings, not at the time of trial.

I find that the decision of the district court was predicated solely upon (1) her physical presence in the Islands, and (2) the fact that she was living there for a "few months" prior to trial. This was not sufficient to qualify Mrs. Bodin as a "female resident" under the statute without an additional finding and supportive evidence that at the time she instituted the proceeding she intended to be a resident, whether temporary or permanent.

Because I find no jurisdiction, I would vacate the judgment.

**UNITED STATES of America**

**v.**

**Raymond BRAHM et al.**

**Appeal of Anthony Michael MEDINA.**

**No. 71-1361.**

United States Court of Appeals, Third Circuit.

Submitted Nov. 8, 1971 under 3rd Cir. Rule 12(6).

Decided April 26, 1972.

See also D.C., 323 F.Supp. 1277.

David C. Toomey, Duane, Morris & Heckscher, Philadelphia, Pa., for appellant.

Charles B. Burr, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before VAN DUSEN and JAMES ROSEN, Circuit Judges and LAYTON, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Defendant was indicted with two co-defendants in October 1969 in (a) Count I for conspiracy (18 U.S.C. § 371) to rob a bank "by force and violence, and by intimidation, to take and attempt to take from employees of the . . . Bank . . ." $50,980.00, offenses recited to be in violation of 18 U.S.C. § 2113(a), (b) and (d); (b) Count II for the substantive offense of bank robbery by force and violence and intimidation in violation of 18 U.S.C. § 2113(a); (c) Count IV for the substantive offense of entering the bank with intent to commit larceny in violation of 18 U.S.C. § 2113(a); (d) Count VI of taking the money from the bank with intent to steal in violation of 18 U.S.C. § 2113(b); and (e) Count VIII of putting in jeopardy the lives of bank employees while committing bank robbery in violation of 18 U.S.C. § 2113(d). His first trial on these counts was held in April 1970, at which time he was represented by counsel appointed by the court under the Criminal Justice Act. Although such counsel was present at all times, assisting Medina during this trial, Medina insisted on making the opening and closing arguments to the jury and examining the witnesses. Evidence which was not properly admissible and which was prejudicial to the Government was placed before the jury because of conduct of defendant during the trial, much of which was contrary to the directions

of the trial judge.[1] For example, during the opening statement, the defendant told the jury that he would show that co-defendant Brahm stated in his confession to the police that the other man who robbed the bank was not Medina, but such evidence was not placed before the jury except through improper suggestion. Also, the defendant indicated through leading questions put to his co-defendant, who refused to answer every question asked him when called by Medina, that the co-defendant had told the police "that another man" robbed the bank.[2] Both during his opening and his closing arguments, even though Medina did not testify, he stated that he did not go into the bank and was at the racetrack on the day of the robbery.[3]

On the third day of the trial, the trial judge charged the jury, which retired for its deliberations at 11:20 A.M. The jury was sent out to lunch and then returned to continue deliberations. At about 4:45 P.M., and again at 5:10 P.M. and 5:27 P.M., the jury sent questions to the court, indicating that they might be disagreeing on some counts but not on all counts. At 6:09 P.M., the jury notified the court that it had agreed on one count but "We cannot reach a verdict on the remaining counts." When the court, having brought the jury into the court room, read back the just quot-

1. For example, the judge warned the defendant that he could not make statements of fact to the jury as a basis for challenging testimony that witnesses had given in open court saying (N.T. 257):

"... you can't say that to the jury, that you were not in the car, since you didn't testify.

"... You pled not guilty to the robbery in general, but now you are telling the jury that you were not in the car as if you had testified. Make that clear, and I will let you tell them, but I don't want you to go beyond the testimony in this case, do you understand? You can argue on all the testimony, anything, any inference from that testimony."

Thereafter, Medina told the jury (N.T. 259) he wore glasses, using this language: "I have to wear glasses. . . . It has been on my driver's license before, long before this bank was robbed. . . . I have stated—I have repeated in vain because circumstances appear against me —that I am innocent."

2. The following appears at N.T. 232–33:
"Q. Mr. Brahm, did you give a statement to the police concerning this bank robbery?
"A. I take the Fifth Amendment.
"Q. Mr. Brahm, didn't you tell the police in the presence of attorneys and Mr. Nolan and Mr. Stoddard that another man robbed the bank with you and it wasn't me?
"A. I take the Fifth Amendment.
"Q. Mr. Brahm, isn't it true that I was at the Liberty Bell racetrack on July 25, with another person?
"A. I take the Fifth Amendment.
"Q. And you called me over and I was arrested because you called me over?

"A. I take the Fifth Amendment.
"Q. Isn't it true, Mr. Brahm, that you left the other man who robbed the bank with you at Thornton Road and you separated from him and you told him you would meet him later?
"A. I take the Fifth Amendment.

"Q. Isn't it true that if you would testify, you would testify that it was another man who robbed that bank with you?
"A. I take the Fifth Amendment.
When Medina called his former attorney to the stand, the transcript shows the following at N.T. 225–26:
"THE COURT: . . . You said you were present at the time Mr. Raymond Brahm gave a statement to the police?
"THE WITNESS: Yes.
"BY MR. MEDINA:
"Q. Do you recall Mr. Brahm saying that he robbed the Girard Trust Bank on July 25, 1969?
"MR. BURR: I object again, Your Honor, on the ground that it is hearsay.
"THE COURT: Sustained. Mr. Brahm is not on trial here and it is hearsay.
"BY MR. MEDINA:
"Q. Do you recall Mr. Brahm saying that I was not with him when he robbed that bank; it was some other man?
"MR. BURR: Objection, Your Honor, for the same reason.
"THE COURT: Sustained."

3. N.T. 14, 251, 255. Similarly, during his closing argument, Medina told the jury that he did not have a "gravely voice" and hence a witness who had identified him but had also testified he had such a voice was inaccurate.

ed language, the foreman replied, "That's right, Sir."

The court then directed the Clerk to take the verdict. The jurors returned a verdict of guilty on Count I and repeated that they could not agree on the remaining counts. This language then appears in the transcript (N.T. 318, 319):

"THE COURT: As to the remaining counts, I am continuing the case, withdrawing a juror—

"MR. MEDINA: Your Honor, I object at this point.

"THE COURT: . . . As to the remaining counts, I am withdrawing a juror and continuing the case, as to the other counts, because you are hopelessly deadlocked as to the other counts; is that right?

"THE FOREMAN: Right, sir.

"THE COURT: And so say you all?

"THE JURY: Yes, sir.

"THE COURT: Now, you want to say something, Mr. Medina?"

Although the trial judge gave the defendant this opportunity to state reasons in support of his objections, Medina did not request that the jury continue its deliberations on Counts II, IV, VI and VIII at that time or the next day, but contended that the judge had advised the jury that it could not find him guilty of conspiracy as charged on Count I (see footnote 5 below). The jury was polled as to (1) its verdict on Count I and (2) its disagreement on the remaining counts. The jury was then discharged for the night, after making clear that it was not inconvenient for it to return to the Court House for service in any cases the next day.

Thereafter the defendant was retried, and found guilty on the substantive counts (II, IV, VI, and VIII) of bank robbery. This appeal is from the March 15, 1971, judgment and commitment entered after the return of these guilty verdicts.

The sole question before us is whether the defendant was placed in double jeopardy as to the above substantive counts when the trial judge, at about 6:25 P. M., declared a mistrial without making a formal determination in the presence of counsel and the defendant that the "ends of justice would best be served" in declaring a hung jury or, stated otherwise, making a formal record in support of the fact that the declaration of a mistrial under all the circumstances constituted "a scrupulous exercise of judicial discretion," United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L. Ed.2d 543 (1971).[4]

In the *Jorn* case, the Court quoted with approval this language from United States v. Perez, 9 Wheat. 579, 580, 6 L. Ed. 165 (1824):

" 'We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful sound, and conscientious exercise of this discretion, rests, in this, as in other cases,

---

4. We note that the most recent language used by this court on this subject was prior to the decision of the Supreme Court of the United States in *Jorn, supra*. See United States v. Phillips, 431 F.2d 949, 950 (3d Cir. 1970).

upon the responsibility of the Judges, under their oaths of office.' *Id.*, at 580."

After the above quotation, the *Jorn* opinion stated the rule applicable to a situation such as this, where the defendant has objected to the declaration of a mistrial, as follows at pp. 485–486 of 400 U.S., p. 557 of 91 S.Ct.:

> ". . . [T]he *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option' until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings.
>
> . . .
>
> ". . . [T]hat discretion must still be exercised; unquestionably an important factor to be considered is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process. Yet we cannot evolve rules based on the source of the particular problem giving rise to a question whether a mistrial should or should not be declared, because, even in circumstances where the problem reflects error on the part of one counsel or the other, the trial judge must still take care to assure himself that the situation warrants action on his part foreclosing the defendant from a potentially favorable judgment by the tribunal.
>
> ". . . [I]n the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate."

▌ After careful consideration of the record, we have concluded that the

judge did not abuse his discretion in view of the following:

A. The judge was entitled to consider that the jury had heard a great deal of inadmissible evidence as the result of the above-described conduct of the defendant, who refused to permit his appointed attorney to conduct his defense in the court room and who disregarded the trial judge's instructions. This court has frequently held that "the defense will not be heard to complain of matters which result from its own conduct." United States v. Greenberg, 419 F.2d 808, 809 (3d Cir. 1949); *see, also,* United States v. Murray, Dixon, Appellant, 445 F.2d 1171, 1176 (3d Cir. 1971); United States v. Kafes, 214 F.2d 887, 888 (3d Cir. 1954).

B. The only reasons the defendant stated in support of his objection to the declaration of a mistrial were complaints concerning the instructions given by the trial judge to the jury in answer to the questions sent during their deliberations (N.T. 318–19).[5] The defendant did not ask that the jury continue its deliberations either that evening or the next day.

C. The jury had deliberated for over five hours (not including the estimated time of 90 minutes for having lunch at a hotel across the street from the Court House) in a case which took only two days for the presentation of all evidence and all arguments of counsel to the jury. It was not unreasonable or unusual for the court to dismiss the jury after 6 P.M. under these circumstances.

D. The jury had stated several times to the judge that it could not agree on a verdict on the substantive counts.

In view of the factual situation described above, the record shows that the trial judge took "care to assure himself

5. These complaints are rejected by this court for the reasons so well stated in Judge Van Artsdalen's opinion of March

5, 1971 (page 2 of Document 39 in Criminal No. 69–318, E.D.Pa.).

that the situation warrant[ed] action on his part foreclosing the defendant from a potentially favorable judgment (*Jorn*, at 486 of 400 U.S. at 557 of 91 S.Ct.)

■ For the foregoing reasons, the judgment will be affirmed.[6]

---

6. The defendant's contention that the April 1970 conviction of conspiracy prohibited his later trial on the substantive counts under double jeopardy principles is rejected. See Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); cf. United States v. Pappas, 445 F.2d 1194, 1198 (3d Cir. 1971), and cases there cited.