Conrad **WHITFIELD**

v.

**WARDEN OF the MARYLAND HOUSE OF CORRECTION.**[1]

**Civ. No. 72–892–K.**

United States District Court,
D. Maryland.

Feb. 20, 1973.

19. *See* Schroeder Nursing Care, Inc. v. Mutual of Omaha Ins. Co., 311 F.Supp. 405, 408 (E.D.Wis.1970).

1. When Whitfield instituted this proceeding, he was then confined in the Baltimore City Jail and accordingly named the Warden of that institution as the defendant herein. By agreement of counsel the Warden of the Maryland House of Correction has been substituted as defendant and all documents filed herein both for and against the original defendant are to be deemed as filed for and against the substituted defendant.

Morton Guth, Baltimore, Md., for petitioner.

Edward M. Ranier, Asst. State's Atty., Baltimore, Md., for respondent.

MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

Conrad Whitfield, presently detained in the Maryland House of Correction, contends that his second trial, on charges of murder and conspiracy to commit murder, would be violative of federal constitutional principles of double jeopardy.[2] On June 21, 1971, a jury trial of Whitfield and his co-defendant Paul C. Baker was commenced in the Circuit Court for Carroll County, Maryland, Judge Weant presiding. During the second day of that trial, while counsel for Whitfield was in the process of arguing, at the end of the prosecution's case, a motion for acquittal, a juror, apparently by inadvertence, reentered the courtroom. The transcript of the proceedings reveals that the following transpired:

Proceedings before the Court after the State rested its case.

COURT: Do you have motions?

MR. GUTH [counsel for petitioner]: The general motion of dismissal, yes sir.

COURT: Ladies and Gentlemen of the Jury, I think it might be a good time now to recess for lunch. We'll take a recess until one o'clock. You be back at that time. And while you're out please do not discuss the case with anyone or discuss it among yourselves. See you at one.

(Thereupon Jury discharged for lunch at 11.46 o'clock, a.m. to resume at One o'clock, p.m.)

COURT: All right.

MR. GUTH: A motion for a judgment of acquittal as to both indictments, the conspiracy and the murder charge.

MRS. MITCHELL: Your Honor,—

COURT: Let Mr. Guth finish first.

MR. GUTH: I don't think the State has proved a prima facie case directing my attention to the murder. I think, number one, no connection has been made as between the defendant, Whitfield, and the actual murder here. There has been talk about a gun supplied by one of the witnesses, credibility very questionable, no connection with that gun or any gun with Mr. Whitfield. There's a bullet that has not been introduced into evidence, the chain of custody of which is very questionable to me. The last point that I remember that that bullet was was in a box in the Crime Lab. There's no evidence in this case indicating how that bullet arrived here, although it is acutally, you've allowed it to be in evidence and you've made some statement as to the weight that you would personally attach to it.

COURT: My point is that it was proved that he was killed by a 32 bullet. Whether or not the bullet is introduced I think is immaterial.

MR. GUTH: It's quite obvious there was a murder committed.

COURT: That's not on the point.

MR. GUTH: Now failing to show these things, failing to place the defendant at this scene, and the only evidence we have thus far as to any witness having seen anything is the other

2. Whitfield is presently serving a four-year sentence running from April 20, 1972, upon two counts of assault, imposed by Judge Robert Watts sitting in the Criminal Court of Baltimore City. There is also outstanding a retake warrant on Whitfield for an alleged parole violation in connection with his parole from the Maryland Correctional Institution on September 30, 1969. Further, there is outstanding a detainer filed by the Sheriff of Baltimore City in connection with the murder and conspiracy charges which relate to the June 21, 1971 trial during which the occurrences involved in this proceeding took place.

highly questionable witness. I think that was Cheeks, no, Harold Jones, brother of the deceased.

(Thereupon Juror entered Court Room)

COURT: Is there going to be any question raised, might as well raise it now. Now, just a minute, let it be, the record show that one of the jurors was in the jury room and could have heard so much of the motion and the Court's remarks. If there's anybody that feels prejudiced at this time please say so. I don't want to go further with the trial if you feel so. If you feel any way, one way or the other, I want to know now and not have it raised later on.

MR. GUTH: For the record I will say on behalf of the defendant, Whitfield, that I don't, that it is my firm belief that the witness heard absolutely nothing that was stated, the juror rather.

COURT: Well let's go on the assumption that he did because he might have. I want to known whether or not anybody wants to raise that question at this time.

MR. GUTH: I want to—my observation from this vantage point I think the door was shut and I think it only was opened at the time as he entered and at that time there was no testimony. There was no argument or conversation in his presence.

MRS. MITCHELL [counsel for petitioner's co-defendant]: May it please the Court I feel duty bound for my client, on behalf of my client, Paul Baker, to raise the question as to whether the juror did hear anything. The door was open and arguments had begun on the motion and for the protection of my client's rights in this case.

COURT: I don't blame you. Now I want to ask you this. Would it be sufficient to ask the juror, after lunch, whether he heard anything or do you want to rest the matter on the assumption that he did. That's entirely up to you.

MR. GUTH: I think that would be a very satisfactory method of resolving it as far as—

COURT: You're not complaining.

MR. GUTH: I'm not complaining.

COURT: Mrs. Mitchell, and she has the right to. I want her to be satisfied.

MRS. MITCHELL: I do complain on behalf of my client.

COURT: All right. We'll call it a mistrial. When the jury comes back, withdraw a juror, and dismiss the case. Set another time which will not be until August at least because I'm going away in July. Can't get it in before then. All right.

MR. GUTH: Your Honor, would your Honor possibly reconsider if this juror would return—.

COURT: I can't do it in light of Mrs. Mitchell's objection, no sir. Couldn't possibly do it.

AFTERNOON SESSION 1:00
o'clock, p. m.

COURT: Ladies and Gentlemen, I think your job is over. There's a slight irregularity and the Court has granted a motion for mistrial so we'll have to withdraw a juror and call it a day.

Subsequently, Whitfield's motion for a dismissal of the charges against him on the ground that any further trial would subject him to being twice placed in jeopardy was denied by Judge Weant. On appeal, the Court of Special Appeals of Maryland, in an opinion by Judge Orth, affirmed that denial, Judge Moylan dissenting, sub nom. Baker, Whitfield & Wilson v. State, 15 Md.App. 73, 289 A.2d 348 (1972). After Whitfield's petition for reargument had been denied by the Court of Special Appeals, the Court of Appeals of Maryland declined discretionary review. Having thus exhausted his state remedies Whitfield now seeks federal habeas corpus review

in this Court, again urging his double jeopardy contention.

In Benton v. Maryland, 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed. 2d 707 (1969), the Supreme Court overruled its earlier holding in Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), that federal double jeopardy standards were not applicable to state criminal proceedings. Thus, since *Benton*, federal constitutional double jeopardy principles are applicable to state court trials such as Whitfield's 1971 trial. Those principles do not dictate the application of a mechanical rule barring any and all retrials if jeopardy has once attached and the jury is subsequently discharged without the defendant's consent. Rather, the Supreme Court has recognized that, in some instances, " * * * a defendant's valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), collides with the inability of any society to guarantee those who stand accused a perfect trial, and that therefore in some instances the Government is afforded another opportunity to present its case. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824) (discharge of a jury which reports an inability to reach a verdict); *Wade, supra* (court-martial discharged because of change in field conditions). In United States v. Perez, however, the Court (at 580) stressed that reprosecution should be permitted after a mistrial only when "there is a manifest necessity for the act [i. e., the mistrial] or the ends of public justice would otherwise be defeated." More than a century after *Perez,* in 1961, in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L. Ed.2d 901 (1961), Mr. Justice Frankfurter, speaking for five members of the Court, after noting that the intermediate federal appellate court had characterized the trial judge's declaration of a

mistrial as "overassiduous" and had criticized the jury's discharge as "premature", held (at 369, 81 S.Ct. at 1527), in the course of reversing the appellate court and approving the trial court's action, that: " * * * we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." Mr. Justice Douglas' dissenting opinion, joined by Mr. Chief Justice Warren, and Mr. Justices Black and Brennan, suggested (at 370, 81 S.Ct. at 1527) that the majority had erred in phrasing the inquiry " * * * in terms of whether a mistrial has been granted 'to help the prosecution' on the one hand or 'in the sole interest of the defendant' on the other."

In United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), a federal district judge had aborted the trial and discharged the jury, without the defendant's consent, because of the trial judge's solicitude for potential Fifth Amendment self-incrimination dangers facing certain government witnesses. Mr. Justice Harlan's plurality opinion, joined by Mr. Chief Justice Burger [3] and Mr. Justices Douglas and Marshall, seemingly rejected the rationale of *Gori,* stating (at 483, 91 S.Ct. at 556), " * * * we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision," and holding (at 487, 91 S.Ct. at 558):

* * * When one examines the circumstances surrounding the discharge of this jury, it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the sua sponte dec-

---

3. The Chief Justice wrote a brief concurrence in which, while he noted "his reluctance", he also noted that the defendant had done nothing to bring about the trial judge's declaration of a mistrial.

laration of this mistrial. United States v. Perez, 9 Wheat. at 580, 6 L. Ed., at 166. Therefore, we must conclude that in the circumstances of this case, appellee's reprosecution would violate the double jeopardy provision of the Fifth Amendment.

In *Jorn*, Mr. Justices Black and Brennan were of the opinion that the Supreme Court lacked jurisdiction of the appeal under 18 U.S.C. § 3731:

> * * * because the action of the trial judge amounted to an acquittal of appellee and therefore there was no discretion left to the trial judge to put appellee again in jeopardy. However, in view of a decision by a majority of the Court to reach the merits, they join the judgment of the Court.

Mr. Justice Stewart, joined by Mr. Justices White and Blackmun, dissenting, wrote (at 488, 91 S.Ct. at 558):

> The plurality opinion today says that whenever a trial judge in a criminal case has "abused his discretion" in declaring a mistrial on his own motion, the constitutional guarantee against double jeopardy categorically operates to forestall a trial of the case on the merits. I cannot agree.

The dissenting opinion concluded (at 491, 91 S.Ct. at 560) that the plurality opinion's reasoning was both " * * * overbroad and flatly inconsistent with this Court's decision in Gori v. United States, supra."

In his consideration of *Jorn* on the occasion of Whitfield's appeal, Judge Orth of the Court of Special Appeals of Maryland, noted (15 Md.App. at 82, 289 A.2d at 354) that:

> * * * there was a majority of six joining in the judgment but only a

plurality of four joining in the opinion delivering the judgment.

and that:

> * * * [Mr. Justice Harlan's] opinion is * * * not that of the [Supreme] Court and because it is not the opinion of the Court none of its findings, conclusions and views are constitutionally the "Supreme Law" of Maryland nor are the "Judges of this State, and all the People of this State * * * bound thereby." In other words, the opinion of the plurality of four Justices is no more controlling in this State than is the dissenting opinion of the three Justices. Therefore, we may look at the Harlan opinion and the Stewart opinion only in the frame of reference of their persuasiveness.

Judge Orth concluded (at 89, 289 A.2d 358):

> * * * We are persuaded that the proper interpretation of *Gori* is that of the Stewart opinion in *Jorn*.
>
> * * *

Whether that construction of the effect of a plurality opinion is a construction which a state court is free to adopt in general, or may adopt with regard to *Jorn*, is a question which this Court need not decide. While in *Jorn*, Mr. Justices Black and Brennan joined only the "judgment of the Court", they stated that the "action of the trial judge amounted to an acquittal of appellee", and thus clearly rejected the *Jorn* dissenters' approval of the trial judge's actions, just as they had rejected the rootstalk of the *Jorn* dissent, namely, *Gori*, ten years earlier.[4] Thus, six of nine Justices who sat in *Jorn* disagreed with the dissenting views of Mr. Justice

---

4. Mr. Justices Black and Brennan, along with Mr. Chief Justice Warren, joined Mr. Justice Douglas' dissent in *Gori*, *supra*, which stated (367 U.S. at 370, 81 S.Ct. at 1527):

> * * * But not until today, I believe, have we ever intimated that a mistrial ordered "in the sole interest of the defendant" was no bar to a second trial

where the mistrial was not ordered at the request of the defendant or with his consent. Yet that is the situation presented here, for the Court of Appeals found that the trial judge "was acting according to his convictions in protecting the rights of the accused." [Footnote omitted.]

Stewart which Judge Orth elected to follow in denying Whitfield's appeal.[5]

Since *Jorn*, the Supreme Court itself has seemingly acted upon the premise that *Jorn* states the law governing double jeopardy claims. See Somerville v. Illinois, 401 U.S. 1007, 91 S.Ct. 1250, 28 L.Ed.2d 543 (1971), in which, in the course of granting certiorari, the Court stated: " * * * judgment vacated, and case remanded to the Court of Appeals for reconsideration," citing *Jorn* and Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).[6] Additionally, all nine of the federal courts which have considered the impact of *Jorn* have followed Mr. Justice Harlan's teaching in *Jorn*, without in any way denigrating its status.[7] Fur-

ther, in any event, the weight to be given the *Jorn* plurality opinion is not a question open to this Court. For even if the courts of the State of Maryland may not be so bound, United States of America ex rel. Lawrence v. Woods, 432 F.2d 1072 (7th Cir. 1970),[8] this Court is bound by the views of the United States Court of Appeals for the Fourth Circuit, which has twice considered post-*Jorn*-double jeopardy attacks and has twice seemingly proceeded on the assumption that Mr. Justice Harlan's *Jorn* opinion provided the appropriate standard to follow. In United States v. Walden, 448 F.2d 925 (4th Cir. 1971), modified on rehearing en banc and remanded to the original panel, 458 F.2d 36 (4th Cir. 1972), considered on non-jeopardy issues

5. *Cf.* North v. The Superior Court of Riverside County, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305 (1972) (copy placed in the official court file in this case), concluding that a portion of the opinion of Mr. Justice Stewart in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), was not binding upon the Supreme Court of California. However, in *Coolidge*, three Justices concurred in the opinion written by Mr. Justice Stewart while Mr. Justice Harlan joined only in the majority result and declined to join in the plurality opinion or in the dissenting views of the other four members of the Court with regard thereto. Instead, concurring specially with Mr. Justice Stewart, Mr. Justice Harlan stated his own views.

6. In *Somerville*, Mr. Justice Douglas was of the opinion that " * * * the petition should be granted and judgment reversed. United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543."

7. United States of America v. Lansdown, 460 F.2d 164 (4th Cir. 1972), discussed *infra* at p. 979 in the body of this opinion; United States of America v. Brahm et al., 459 F.2d 546 (3d Cir. 1972) ; United States v. Engle, 458 F.2d 1021, 1025 n. 6 (6th Cir. 1972) ; United States v. Walden, 448 F.2d 925 (4th Cir. 1971), modified on reconsideration en banc, 458 F.2d 36 (4th Cir. 1972), remanded to original panel, 464 F.2d 1015 (4th Cir. 1972), petition for certiorari filed July 31, 1972, 41 U.S.L.W. 3192 *and pending* as of the date of the filing of this Memorandum and Order,* United States

ex rel. Somerville v. Illinois, 447 F.2d 733 (7th Cir. 1971), cert. granted, 405 U.S. 987, 92 S.Ct. 1247, 31 L.Ed.2d 452 (1972), argued November 13, 1972 and undecided as of the date of the filing of this Memorandum and Order; United States ex rel. Peetros v. Rundle, 342 F.Supp. 55 (E.D. Pa.1972) ; United States v. Zirpolo, 334 F.Supp. 756 (D.N.J.1971) ; Hairston v. Slayton, 333 F.Supp. 197 (W.D.Va.1971) (opinion by Judge Widener, then a District Judge) ; United States v. LeMay, 330 F.Supp. 628 (D.Mont.1971) ; United States v. Medina, 323 F.Supp. 1277 (E.D. Pa.1971).

* discussed *infra* at pp. 977–979 in the body of this opinion ;

8. The Court in *Woods*, per Chief Judge Swygert, noted (at 1075) :

Although we have found no federal court decisions dealing directly with the point, state appellate courts on occasion have discussed the effect of lower federal court decisions on subsequent cases arising in state courts.

Judge Swygert then held that the views expressed by the Supreme Court of New Jersey in State v. Coleman, 46 N.J. 16, 214 A.2d 393 (1965), and by the Supreme Court of Iowa in Iowa Nat. Bank v. Stewart, 214 Iowa 1229, 232 N.W. 445 (1930), to the effect that the decisions of lower federal courts are not binding upon state courts, was correct. *See also* Greene v. State, 11 Md.App. 106, 110, 273 A.2d 830 (1971), and Moon v. State, 1 Md.App. 569, 571, 232 A.2d 277 (1967), holding that Maryland courts *are* not bound by the decisions of the United States courts of appeal or the United States district courts.

by the original panel, 464 F.2d 1015 (4th Cir. 1972), petition for certiorari filed July 31, 1972, 41 U.S.L.W. 3192, and pending as of the date of the filing of this Memorandum and Order, Judge Craven, speaking for a unanimous panel composed of himself and Judges Boreman and Bryan, considered a federal trial which had been aborted by the trial judge because two of the jurors had seen one or more defendants, during a recess in their robbery-conspiracy trial, in handcuffs. In that case, several defendants sought and several defendants protested the mistrial. On retrial all of the defendants were convicted. Judge Craven, in holding (at 926) that the retrial of any defendant [9] was barred by the Fifth Amendment as construed in United States v. Jorn, wrote (at 928):

> * * * Although the rubric remains the same, and the Court again declines, as it always has, to formulate rules based on categories of circumstances which will permit or preclude retrial, nevertheless, *Jorn* is, we think, a significant departure from prior controlling case law. We think it controls here and dictates a result we might not otherwise reach. Whether described in terms of "manifest necessity," *Perez, supra,* 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165, "imperious necessity," Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); for "reasons deemed compelling by the trial judge," Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961); or "breakdown in judi-

cial machinery," *id.* at 372, 81 S.Ct. 1523 (Douglas, J., dissenting), unquestionably the trial judge's "sound discretion" to abort a trial has been considerably narrowed. * * *

We think that *Jorn* all but eliminates trial judge motivation as an element to be considered in determining whether an aborted trial bars reprosecution. "Reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." 400 U.S. at 483, 91 S.Ct. at 556. In again expressly declining to formulate "bright line rules," the Court said that such rules "based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant." 400 U.S. at 486, 91 S.Ct. at 557.

Subsequent to the filing by Judge Craven of his opinion in *Walden,* and after a rehearing was entertained by the Fourth Circuit sitting *en banc,* the judgment of the trial court below was affirmed, without opinion, by an equally divided court, 458 F.2d 36 (4th Cir. 1972). The lack of an opinion precludes the possibility of pinpointing the demarcation line between the views of those members of the Court who felt reprosecution to be permissible and the views of those who felt reprosecution to be barred. However, the record discloses that the Government, in the course of

---

9. Judge Craven wrote:
    In light of *Jorn,* we hold with respect to the six defendants who did not move for a mistrial that the double jeopardy clause of the Fifth Amendment barred the second trial, and they are entitled to judgment of acquittal. [at 928–929]
      * * * * *
    The much harder problem is what to do about the four appealing defendants who did join in the motion to the district court for a mistrial. * * * If the abortive procedure below had been initiated by these four defendants, we

would have no doubt about it, for it would be nonsense to allow a defendant to actively seek a mistrial and by so doing thereafter prevent any trial at all. But here the trial judge, albeit with the best of motivation, invited the motions. Indeed the tenor of the colloquy between the court and counsel suggests the possibility that the district judge might have acted *sua sponte* had there been no response to his invitation . . . . [at 929]
    In this case, Baker's counsel did "actively seek a mistrial."

seeking a rehearing *en banc*, pressed three arguments. First, the Government urged that *Jorn* in fact affirmed the "Gori [v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961)] hold[ing] that there is no abuse of discretion where the trial judge grants a mistrial for the sole benefit of the defendant . . . rather than modifying it or changing it." Appellee's Petition for Rehearing En Banc, at 11. Secondly, the Government urged that "[i]n any event *Jorn* should not be applied retroactively. * * *" *Id.* at 12 et seq.[10] Finally, the Government argued that "[o]ther authorities support the principle that there is no abuse of discretion where the trial judge declares a mistrial for the sole benefit of the defendants." Appellee's Supplemental Brief for Rehearing En Banc, at 1. Significant, in the context of the present inquiry, was the failure of the Government to urge upon the Court the suggestion that *Jorn* was in any way entitled to less than full precedential effect.

█ Further, and more importantly, on the same day that the en banc remand Order in *Walden* was filed, the Fourth Circuit handed down its opinion in United States v. Lansdown, 460 F.2d 164 (4th Cir. 1972). In that case, the question presented was whether reprosecution was barred by the Fifth Amendment's provisions against double jeopardy after the trial had been aborted because the trial judge believed the jury to be deadlocked. Judge Winter, in an opinion joined by Judges Butzner and Field, wrote (at 168):

Last term the Supreme Court reiterated its support for the *Perez* doctrine and noted that it stood as "a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." United States v. Jorn, 400 U.S. 470, at 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543. *Jorn represents the latest in a line of cases which has the practical effect of narrowing the discretion of the trial judge to declare a mistrial. See,* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *see also,* United States v. Smith, 390 F.2d 420 (4 Cir. 1968); United States v. Chase, 372 F.2d 453 (4 Cir. 1967). [Emphasis added.]

Judge Winter concluded (at 169) that " * * * there was no 'manifest necessity' in this case for declaring a mistrial when the district court did so." Thus, four Judges of the Fourth Circuit, Judges Winter, Craven, Butzner and Field, and two Senior Judges of that Court, Judges Boreman and Bryan,[11] have treated the teaching of Mr. Justice Harlan's plurality opinion in *Jorn* as if it represents a constitutionally mandated standard for testing a double jeopardy claim.[12] Judged against that test, Whitfield's reprosecution would be in contravention of his constitutional right not to be twice put in jeopardy. Jeopardy attached in Whitfield's first trial since his trial before the jury had commenced. Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

---

10. *Jorn* was decided by the Supreme Court on January 25, 1971. The Whitfield trial took place on June 21, 1971. Thus, no question of retroactive application of *Jorn* arises herein.

11. *See also* Hairston v. Slayton, 333 F. Supp. 197, 200 (W.D.Va.1971), written by Judge Widener, then a District Judge.

12. Mr. Justice Harlan explicitly stated (400 U.S. at 487, 91 S.Ct. at 558) that reprosecution would "violate the double jeopardy provision of the Fifth Amendment," thus removing the possibility that the plurality in *Jorn* was engaged only in the exercise of that Court's federal supervisory duties. *See also* United States ex rel. Somerville v. Illinois, 401 U.S. 1007, 91 S.Ct. 1250, 28 L.Ed.2d 543 (1971), granting certiorari and remanding to the United States Court of Appeals for the Seventh Circuit "in light of *Jorn*" a federal habeas corpus petition attacking on federal constitutional grounds a state conviction.

In the absence of a motion by Whitfield for a mistrial and indeed in the face of his counsel's specific objection to Judge Weant's declaration of a mistrial, *Jorn's* teaching (400 U.S. at 485, 91 S.Ct. at 557) that:

> * * * the Perez doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings. See United States v. Perez, 9 Wheat., at 580, 6 L.Ed., at 166 * * *

was violated by Judge Weant. In that connection, this Court finds itself in agreement with the following comments by Judge Moylan in his dissent in Whitfield's appeal (*Whitfield, supra,* 15 Md. App. at 112, 289 A.2d at 369):

> * * * The trial court was admittedly faced with an awkward situation when two co-defendants pulled in separate directions. It did not, however, in my judgment, persevere sufficiently in exploring whether the juror in question had heard any argument at all or, even in that eventuality, had heard such argument as would be likely to prejudice him against the defendants. It did not explore with defense counsel the possibility of seating an alternate juror. The trial court indicated that it foreswore this possibility out of solicitude for the two black defendants, since the replacement would have worked to remove the only black juror on the panel. I believe that the appellant Whitfield should have been permitted the option of weighing whatever advantage he thought that black juror might have been to him versus the disadvantage of having his trial aborted and having to go through the entire procedure again. Nor do I feel that the trial court gave sufficient consideration to the possibility of severing the two defendants and proceeding with the trial of Whitfield, notwithstanding the mistrial as to Baker. In short, I feel that the trial judge acted precipitously and thereby abused his discretion. Accordingly, I would reverse the order denying the motion to dismiss the indictments as to Whitfield.

Judges Orth and Moylan both seemingly proceeded on the assumption that Mr. Justice Harlan's opinion in *Jorn* if applicable, would require reversal of Whitfield's conviction. That assumption would appear soundly based regardless of whether the doctrine of Gori v. United States, *supra,* remains fully or partly viable in the wake of the *Jorn* plurality opinion. This is because there is little if any factual basis in the record to indicate that the overhearing, if any there was, of Whitfield's counsel by the juror in question would have been likely to result in any prejudice to Whitfield.[13] Nor is there anything in the record in this case to refute Judge Moylan's conclusion that Judge Weant did not sufficiently explore other alternatives before taking the quick and drastic step of declaring a mistrial over the objections of Whitfield's counsel. If the *Jorn* plurality opinion carries any weight, it requires more exploration and consideration of alternatives by the trial judge than occurred in this case.

Since the State may not retry Whitfield for the offenses charged in the pending indictment against him, Whitfield is entitled to have the detainer, lodged against him by the Sheriff of Baltimore City with regard to the charges upon which he was tried on June 21, 1971 before Judge Weant,[14] removed. It is accordingly so ORDERED. However, the effect of that within Order and Judgment is hereby stayed pending final decision by the United States Court of Appeals for the Fourth Circuit in connection with any appeal timely filed by defendant from this Court's within grant of Whitfield's habeas corpus petition.

---

13. *See* pp. 973–974, *supra.*

14. *See* n. 2, *supra.*