Conrad **WHITFIELD**, Appellee,

v.

**WARDEN OF the MARYLAND HOUSE OF CORRECTION**, Appellant.

No. 73–1498.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1973.

Decided Nov. 8, 1973.

Josef E. Rosenblatt, Asst. Atty. Gen., of Md. (Francis B. Burch, Atty. Gen., of Md. and Edward F. Borgerding and John P. Stafford, Jr., Asst. Attys. Gen., on brief) for appellant.

Morton Guth, Baltimore, Md., for appellee.

Before BUTZNER, RUSSELL and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

The State of Maryland appeals from a judgment of the district court sustaining Conrad Whitfield's claim of double

jeopardy and consequently barring his retrial for murder and conspiracy to commit murder. Influenced in part by recent decisions not available to the district judge, we reverse.[1]

The factual background is not complex.[2] The Circuit Court of Carroll County, Maryland, impaneled a jury to try Whitfield and Paul C. Baker jointly. At the close of the prosecution's case, the jury recessed for lunch, and the court heard motions for judgments of acquittal. During the argument on the motions, one of the jurors entered the courtroom from an adjacent jury room. The trial judge noted this apparently inadvertent intrusion and consulted with counsel for both defendants to determine if the trial should continue. From his position in the courtroom, the judge was unable to see the door to the jury room from which the juror had come, but counsel, who were facing the judge, could see it. The judge knew, however, that if the door had been ajar the juror could have heard the argument for acquittal made by Whitfield's counsel and the judge's response to certain parts of the argument. Whitfield's counsel told the court that from his vantage point he thought the door was closed, and he believed that the juror could have heard nothing. Baker's counsel insisted that the door was open and objected to continuing with the trial. The court then suggested that when the juror returned

from his luncheon recess, he should be asked whether he had heard anything. This was agreeable to Whitfield's counsel, but not to Baker's. The court then declared a mistrial.

Subsequently, Whitfield's counsel moved for the dismissal of both charges on the ground that another trial would subject him to double jeopardy. The trial judge denied the motion, and the Court of Special Appeals affirmed, with one judge dissenting.[3] The Maryland Court of Appeals declined to review the case. Having exhausted his state remedies, Whitfield applied to the district court for a writ of habeas corpus, and the district judge granted relief.[4]

The starting point for interpreting the double jeopardy clause of the fifth amendment[5] as it applies to the declaration of a mistrial over a defendant's objection is United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Holding that a hung jury did not bar a retrial, Mr. Justice Story set forth broad principles, which have been followed ever since in determining whether reprosecution constitutes double jeopardy:

> "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the

---

1. These decisions are Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), and Smith v. Mississippi, 478 F.2d 88 (5th Cir. 1973).

Understandably, the district court thought that earlier proceedings in Somerville's case supported Whitfield's position. *See* United States ex rel. Somerville v. State of Illinois, 429 F.2d 1335 (7th Cir. 1970) (denying a plea of double jeopardy), vacated and remanded, 401 U.S. 1007, 91 S.Ct. 1250, 28 L.Ed.2d 543 (1971); United States ex rel. Somerville v. State of Illinois, 447 F.2d 733 (7th Cir. 1971) (sustaining the plea of double jeopardy). The opinion sustaining the plea was reversed by Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), after the district court filed its opinion in Whitfield's case.

2. The pertinent part of the trial transcript is quoted in Whitfield v. Warden, 355 F.Supp. 972, 973 (D.Md.1973). An excerpt is also included in Baker v. State, 15 Md.App. 73, 289 A.2d 348, 358 (1972).

3. Baker v. State, 15 Md.App. 73, 289 A.2d 348 (1972).

4. Whitfield v. Warden, 355 F.Supp. 972 (D. Md.1973).

5. The double jeopardy clause of the fifth amendment provides "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The fourteenth amendment makes this clause applicable to the states. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

act, or the ends of public justice whould otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office." 22 U.S. (9 Wheat.) at 580.

In applying the *Perez* standards to the facts of this case, we must determine whether in the light of all the circumstances the trial court exercised sound discretion in concluding that a mistrial was warranted by manifest necessity or by the ends of public justice. Obviously, there was no manifest necessity in the sense that it was clearly evident that mistrial was unavoidable, as it is, for example, when the jury is unable to agree or a juror becomes incapacitated. *See e. g.,* United States v. Perez, *supra*; United States v. Potash, 118 F. 2d 54 (2d Cir.), cert. denied, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540 (1941).[6] But the Court has never held that the *Perez* doctrine of manifest necessity implies an absolute need. Instead, it has read the requirement of manifest necessity in the light of the *Perez* concept of public justice. *See* Illinois v. Somerville, 410 U.S. 458, 461, 93

S.Ct. 1066, 35 L.Ed.2d 425 (1973). *Perez's* public justice policy embraces two components, "a defendant's valued right to have his trial completed by a particular tribunal," and "the public's interest in fair trials designed to end in just judgments." Ideally, these elements coexist, but in some instances the first must be subordinated to the second. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Expounding this theme, dictum in the Court's most recent interpretation of the double jeopardy clause notes that the public justice policy of *Perez* is served by a mistrial when the jury cannot return an impartial verdict. Illinois v. Somerville, 410 U.S. at 464, 93 S.Ct. 1066.

Whitfield relies primarily on United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), in which the Court held that reprosecution was barred after the trial judge discharged the jury to afford government witnesses an opportunity to consult counsel so they would not incriminate themselves.[7] Pointing out that the judge presiding over Jorn's trial had given no consideration to an alternative course of action such as a continuance, the Court observed that "it seems abundantly apparent that the trial judge made no effort to exercise a sound discretion to assure that, taking all the circumstances into account, there was a manifest necessity for the *sua sponte* declaration of this mistrial." 400 U.S. at 487, 91 S.Ct. at 558.

While *Jorn* is instructive, we think that it is not controlling. Time and again, the Court has refused to formulate rigid rules governing the application of the double jeopardy clause, and it has pointed out that the cases generally

---

6. The trial judge, however, must exercise sound discretion to avoid discharging the jury prematurely. United States v. Lansdown, 460 F.2d 164 (4th Cir. 1972). And now when a juror becomes incapacitated, a discreet judge should ascertain whether the trial can proceed by consent under F.R.Cr.Proc. 23(b).

7. Whitfield also relies on United States v. Walden, 448 F.2d 925 (4th Cir. 1971). This opinion, however, was superseded on rehearing en banc where the decision of the district court with respect to the question of double jeopardy was affirmed by an equally divided court. United States v. Walden, 458 F.2d 36 (4th Cir. 1972).

turn on their particular facts. *See* United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Wade v. Hunter, 336 U.S. 684, 691, 69 S.Ct. 834, 93 L.Ed. 974 (1949). These cases illustrate that the Court's discussion of the *Perez* standard cannot be wrested from its factual context. Thus, the Court's ruling with respect to alternatives to mistrial when a judge perceives that witnesses have not been adequately cautioned cannot be applied literally to the problem confronting a trial judge who fears that a juror has been exposed to improper influences.

The cases in which mistrials have been declared because of suspected juror bias support the conclusion that Whitfield's reliance on *Jorn* is misplaced. *See e. g.*, Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); United States v. Chase, 372 F. 2d 453 (4th Cir.), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); United States v. Smith, 390 F. 2d 420 (4th Cir. 1968). In each of these cases, after the jury had been impaneled and sworn, the trial judge received information which rendered suspect the ability of one or more of the jurors to reach an impartial verdict. The exercise of the trial judge's discretion in declaring a mistrial was upheld, and reprosecution was permitted over objections based on the double jeopardy clause. Significantly, in each case, after the trial judge had ascertained that a juror had received an improper communica-tion, the reviewing court did not require the judge to determine whether the communication had in fact prejudiced the juror. Discovery of the harmful communication in itself afforded grounds for mistrial.[8] And in the recent case of Smith v. Mississippi, 478 F.2d 88 (5th Cir. 1973), a mistrial was held not to bar reprosecution, even though the juror insisted that an improper conversation with a bailiff would not influence his judgment. It is with these precedential applications of the *Perez* standard in mind that we examine the ruling of the state trial judge.

The district judge, in agreement with the dissenting judge on the Maryland Court of Special Appeals, held that Whitfield's reprosecution was barred by the double jeopardy clause because the state trial judge acted precipitously instead of scrupulously examining the necessity for mistrial. Quoting from the dissent, he emphasized that the trial judge should have interrogated the juror to find out what the juror had heard and whether he had become prejudiced against either defendant. Furthermore, he concluded that the trial judge should have given greater consideration to impaneling an alternate juror or to severing the defendants and proceeding with the trial of Whitfield.

■■ When the trial judge denied Whitfield's plea of double jeopardy, he filed a written opinion setting forth his reasons for declaring a mistrial.[9] This opinion and the transcript of the trial proceedings[10] furnish the material for evaluating his discretion. At the outset, we put aside the trial judge's statement

---

8. Perhaps the clearest exposition of this rule is Mr. Justice Black's dictum in Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949):

    "[T]here have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury *might be biased* against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a re-trial. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." [Emphasis added] (footnote omitted)

9. The trial judge's opinion is not reported, but excerpts are quoted in Baker v. State, 15 Md.App. 73, 289 A.2d 348, 359–360 nn. 22, 23 and 24 (1972).

10. See note 2, *supra*.

that his sole intent was to protect the interests of the defendants. Although a trial judge's beneficent motive was considered significant in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L. Ed.2d 901 (1961), it now can be accorded little or no weight. United States v. Jorn, 400 U.S. 470, 483, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). On the other hand, reprosecution is barred if the purpose of the trial judge's declaration of a mistrial is to harass the defendant or assist the government. *See* Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Here there is no suggestion that either of these factors played any part in the judge's decision to grant a mistrial.

The trial judge did not act sua sponte. Before declaring a mistrial, he sought the views of counsel for both defendants. Confronted by Baker's objection to proceeding with the trial, which was tantamount to a motion for mistrial, he suggested interrogating the juror. Only when this proposal proved objectionable to Baker, did he declare a mistrial.

■ While interrogation of the juror would not have been amiss, the trial judge was not bound to follow this course of action. He already knew that the juror had come into the courtroom during the argument on a motion for a judgment of acquittal. More importantly, Baker's lawyer, whose credibility the trial judge declined to reject, stated that the door to the jury room was open. Against this assertion, Whitfield's lawyer could only say that from his vantage point he thought the door was closed. The trial judge knew that with the door ajar the juror was exposed to argument and colloquy between the court and counsel that should play no part in the jury's consideration of its verdict. Given these circumstances, we believe that there was a reasonable basis for the trial judge's conclusion that the juror had been subjected to an improper influence. As the cases dealing with the problem of juror disqualification indicate, a trial judge need not explore whether the extraneous communication

has in fact prejudiced the juror. When a judge concludes that on the basis of facts and reasonable inferences to be drawn from the facts that a juror has been exposed to information that might taint his verdict, he may withdraw the juror in the exercise of his sound discretion without unconstitutionally subjecting the defendant to double jeopardy. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891).

■ ■ Generally, declaration of a mistrial would be improvident if substitution of an alternate juror would permit the trial to proceed to a just verdict. But no inflexible rule prohibits mistrial regardless of the circumstances attending the substitution of the alternate. In his written opinion, the trial judge explained that he did not substitute an alternate juror because the defendants were both black and the disqualified juror was the only black person on the panel. The judge was also concerned about the effect the disqualification of the single black juror would have on the rest of the panel. While it is probable that an all white jury could have rendered a fair verdict with respect to these black defendants, the trial judge acted discreetly in shielding the countenance of justice. Substitution of a white juror for the only black juror over the objection of a black defendant could have needlessly injected a racial issue into the case that in the eyes of many persons would impugn the integrity of the court over which the judge presided. In this delicate situation, reviewing courts should be particularly careful to avoid substituting their discretion for that of the trial judge, for it is he who is best situated to decide the compelling need for mistrial. Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

The claim that the trial judge should have granted a severance for Baker and proceeded with Whitfield as an alternative to mistrial is rejected for reasons stated in United States .v. Chase, 372 F. 2d 453, 463 (4th Cir. 1967), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.

Ed.2d 626 (1967), and its companion case, United States v. Smith, 390 F.2d 420, 422 (4th Cir. 1968). There, in a conspiracy trial, when the judge learned that the jurors had read a news article that was critical of one defendant, he granted a mistrial not only to the defendants who had elected jury trial, but also to those who waived a jury and were simultaneously being tried by the court. Pointing to the problems and prejudices that may arise from the severance of a conspiracy case, we upheld the discretion of the trial judge in granting a mistrial to the non-consenting defendants. Similarly in the case now before us, the trial judge's written opinion discloses that he was aware that difficulties and prejudice might arise from a severance.

We conclude, therefore, that the trial judge's declaration of a mistrial satisfies the *Perez* test, and accordingly we reverse the judgment of the district court and remand the case for entry of a judgment denying the writ.